1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOANN RUIZ, | ) | 1:09-CV-2087-GSA |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Joann Ruiz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

//

//

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 8 & 9.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on or about April 25, 2006, alleging disability beginning April 1, 2003.  AR 91.  Her application was denied initially (AR 71-76) and on reconsideration (AR 80-85).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 86.  ALJ Bert C. Hoffman, Jr., held a hearing on December 9, 2008 (36-70), and issued an order denying benefits on February 12, 2009.  AR 7-17.  Plaintiff requested a review of the decision (AR 5) and on April 10, 2009, the Appeals Council denied review.  AR 1-4.

### Hearing Testimony

ALJ Hoffman held a hearing on December 9, 2008, in Fresno, California.  Plaintiff appeared and testified.  He was represented by attorney Geoffrey L. Hayden.  AR 36-70.

Plaintiff is forty-eight years old.  She completed the tenth grade and can read and write. She is five feet tall and weighs 120 pounds.  AR 42.  She has hepatitis B and C and suffers from high blood pressure.  AR 45, 49.  She also has a history of heroin addiction, however, she has not taken the drug in five years.  AR 48.  She was taking methadone, but has not used it in almost a year. AR 48.  Plaintiff has a criminal history, however, she has not been in trouble with the law since 1999.[3]  AR 49.

Plaintiff last worked in 2003 as a dishwasher and cook.  AR 44, 64.  She has also worked as a waitress in the past. AR 45.  She is currently unable to work because she had two minor stokes in 1996 and 1997, and suffers from pain in her arms and legs.  AR 45, 53.  As a result, Plaintiff has difficulty walking because her legs become numb and she falls.  AR 51.  She is able to walk only one block, she can lift a gallon of milk, and she can stand and sit for fifteen minutes to one-half hour.  AR 55-56.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff testified that she has not been on parole or probation for eight years.  AR 49.

1    In addition to the pain in her arms and legs, Plaintiff also suffers from pain in her side

2 from her liver. AR 54. She is hard of hearing because she has two plastic ear drums.[4] AR 50-51.

3 Plaintiff's current medications include Nexium, Zoloft, Elavil and Aspirin. AR 49-50.

4    For fun, Plaintiff watches television. AR 63. She does not have any friends. Plaintiff is

5 able to go grocery shopping with family and occasionally goes to church. AR 57-58. She also

6 does some housework including dusting and cooking. AR 57. She is able to bath herself,

7 although she sometimes needs assistance getting out of the bathtub. AR 58.

8    Plaintiff has had a boyfriend "on and off for four years." AR 52. She is currently living

9 with her boyfriend and they have been together most recently for two years. AR 57. She

10 supports herself through food stamps. AR 57. Plaintiff's boyfriend suffers from bipolar

11 disorder. AR 52. Plaintiff also suffers from psychological impairments. AR 65-66. She has

12 received mental health treatment in the past, however, she only had two appointments because

13 she was unable to afford treatment. AR 55-56. She has recently lost interest in everything and

14 only likes to sit and do nothing. AR 59. She frequently has crying spells and she suffers from

15 hallucinations and hears voices. AR 65-67. She has attempted suicide three times in the past.

16 AR 66.

17 **<u>Medical Record</u>**

18    The entire medical record was reviewed by the Court. Summaries of the relevant reports

19 and treatment notes are provided below.

20    Plaintiff received treatment from Clinica Sierra Vista from September 2005 through

21 March 2006. AR 154-162. Treatment notes indicate Plaintiff suffered from depression, anxiety

22 and insomnia. AR 161. Plaintiff was prescribed Zoloft which was controlling her depression.

23 AR 158-159. Plaintiff stopped attending her counseling appointments beginning March 2006.

24 AR 157-158.

25    On June 3, 2006, Ina Shalts, M.D., conducted a consultative psychiatric examination in

26 Bakersfield, California, at the request of the Social Security Administration. AR 163-167. Dr.

27

28 [4] Plaintiff was not sure if her ear drums were plastic or whether plastic tubes were inserted into her ears. AR 50-51.

3

1   Shalts noted that Plaintiff had been molested by her uncle beginning at the age of three.  Plaintiff

2   suffered severe molestation over several years which stopped when she was ten years old after

3   Plaintiff set her room on fire and threw hot water on her uncle.  AR 164.  Plaintiff reported

4   suffering from depression and using heroin as a teenager to self medicate.  AR 164.

5        During the evaluation, Dr. Shalts found that Plaintiff's mood was very depressed,

6   however, she could understand, carry out, and remember simple instructions.  AR 166.  She was

7   able to do digit spans forward and backwards and interpret proverbs. AR 166.  Further, Plaintiff

8   was oriented to person, place, and time, was able to maintain eye contact, and could answer

9   simple geographic questions.  In addition, Dr. Shalts found that Plaintiff was cooperative, that

10  she could tell similarities and differences, and that her intellect was in the average range. AR

11  166-167.

12       Dr. Shalts diagnosed Plaintiff with posttraumatic stress disorder, major depressive

13  disorder recurrent and severe, heroin dependence in remission with methadone, and a history of

14  alcohol abuse.  AR 166.  Dr. Shalts also opined Plaintiff is able to understand, carry out and

15  remember simple instructions, but that she would have difficulty responding to the ususal work

16  situations or dealing with the routine work settings due to her mental illness.  Although Dr.

17  Shalts found that Plaintiff's condition could improve with treatment, she nonetheless determined

18  Plaintiff was not able to maintain gainful employment.  AR 167.

19       On August 12, 2006, Sarupinder Bhangoo, M.D., conducted a consultative internal

20  medicine evaluation. AR 168-172.  Dr. Bhangoo's examination did not reveal any

21  musculoskeletal or neurological deficits pertaining to the left arm or leg. AR 171.  Although

22  Plaintiff reported a history of hepatitis C, there was no evidence of spastic decomposition in the

23  form of ascites, or jaundice.  AR 171.  Dr. Bhangoo did note Plaintiff was hard of hearing. AR

24  171-172.

25       Dr. Bhangoo opined that: 1) Plaintiff could sit eight hours in an eight-hour work day, 2)

26  she needs no assistive devices, 3) she does not have any postural limitations with bending,

27  stooping, or crouching, 4) she does not have any manipulative limitations with reaching,

28

1  handling, feeling, grasping, or fingering, 5) she has no relevant visual or workplace

2  environmental limitations, and 6) her functional capacity was rated as heavy.

3      Dr. Bhangoo also noted that Plaintiff:

4  comes into the examination without any difficulty. She moves around well. She
   does not have any problems getting [on] or off a chair or climbing up on the
5  examination table. She does not seem to be limited in use of her left arm and is
   able to put weight on her arm as she climbs up on the examination table. She does
6  not seem to be in any pain. AR 169.

7      On August 22, 2006, Dr. Nawar, M.D., completed a Physical Residual Functional

8  Capacity Assessment. He found Plaintiff: (1) can lift up to 50 pounds occasionally and 25

9  pounds frequently, (2) can stand and/or walk and sit about six hours in an eight-hour workday,

10  (3) has unlimited ability to push and/or pull, and (4) she has no postural, manipulative, visual, or

11  environmental limitations. AR 173-177.

12      On September 14, 2006, Dr. Marina C. Vea, M.D., a state agency non-examining

13  psychiatrist completed a Mental Residual Functional Capacity Assessment. She noted Plaintiff

14  had a long history of drug abuse (heroin) and a history of depression. AR 181, 186. Dr. Vea also

15  found that Plaintiff had mild restrictions of activities of daily living, mild restrictions in

16  maintaining social functioning, and moderate difficulties in maintaining concentration,

17  persistence or pace. AR 188. Dr. Vea also found that Plaintiff : 1) can remember, understand,

18  and carry out simple job instructions (AR 193), 2) can sustain concentration, attention,

19  persistence, and pace for simple, repetitive tasks (AR 191), and 3) can adapt to changes in work

20  settings for simple, repetitive tasks with limited public contact. AR 193.

21      Plaintiff was seen several times at the Kern Medical Center in Bakersfield, California

22  ("KMC") from 1998 and 2009. AR 197- 279, 302-324. Medical records from this facility dated

23  2006 note that Plaintiff was to attend "alcohol cessations classes" and "quit alcohol." AR 230,

24  233. In 2008, medical records indicate Plaintiff continued to be diagnosed with "alcohol abuse"

25  AR 307, 308.

26      A neurological examination performed at KMC on May 12, 2008, showed mild left ulnar

27  motor conduction delay, mild left ulnar sensory demyelinating neuropathy, and normal left

28  median/peroneal/post tibial motor and left median/ulnar/sural sensory potentials. AR 312, 313. A

1  neurological examination on August 12, 2008, showed normal motor function in all muscle

2  groups bilaterally and "sensory intact." AR 309.  Doctors recommended that Plaintiff obtain

3  additional testing regarding her liver including a liver biopsy, however, on August 17, 2008,

4  Plaintiff cancelled this procedure. AR 302-324.

5       Medical records from KMC also note a history of intravenous drug use and heroin

6  injections. AR 229, 233, 269, 307, 308, 313.

7  **ALJ's Findings**

8       The ALJ found that Plaintiff had not engaged in substantial gainful activity since March

9  23, 2006, and had severe impairments including status post left arm synovitis, chronic otitis

10  media bilaterally, hepatitis C and B, and major depressive disorder. AR 12.  Nonetheless, the

11  ALJ determined that the severe impairments did not meet or exceed one of the listed

12  impairments. *Id.*

13       The ALJ reviewed the medical evidence and determined that Plaintiff had the RFC to lift

14  and carry twenty pounds occasionally and ten pounds frequently, and that she could stand and/or

15  walk for six hours out of an eight hour day. AR 13.  However, Plaintiff needed to avoid jobs

16  requiring high definition (acute) hearing.  AR 13.  In addition, the ALJ noted that Plaintiff was

17  restricted to performing work with simple repetitive work with limited public contact.  In making

18  this determination, the ALJ found that Plaintiff's subjective testimony regarding her symptoms

19  was not credible.  Although Plaintiff did not have any past relevant work, the ALJ relied on the

20  medical-vocational guidelines and concluded that jobs exist in significant numbers in the

21  national economy that Plaintiff could perform given her RFC.  *Id.*  Accordingly, a finding of "not

22  disabled" was made, as defined in the Social Security Act.  AR 17.

23  **SCOPE OF REVIEW**

24       Congress has provided a limited scope of judicial review of the Commissioner's decision

25  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

26  the Court must determine whether the decision of the Commissioner is supported by substantial

27  evidence. 42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

28  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

1  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

2  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

3  401.  The record as a whole must be considered, weighing both the evidence that supports and

4  the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

5  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

6  apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

7  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

8  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

9  substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

10  Cir. 1987).

11  **REVIEW**

12       In order to qualify for benefits, a claimant must establish that he is unable to engage in

13  substantial gainful activity due to a medically determinable physical or mental impairment which

14  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

15  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

16  such severity that he is not only unable to do her previous work, but cannot, considering his age,

17  education, and work experience, engage in any other kind of substantial gainful work which

18  exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

19  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

20  Cir. 1990).

21       In an effort to achieve uniformity of decisions, the Commissioner has promulgated

22  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

23  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found

24  that Plaintiff: (1) had not engaged in substantial gainful activity since, the alleged onset of her

25  disability; (2) has an impairment or a combination of impairments that is considered "severe"

26  based on the requirements in the Regulations (20 CFR §§ 416.1521 *et seq*)); (3) does not have an

27  impairment or combination of impairments which meets or equals one of the impairments set

28

1  forth in 20 CFR Part 404, Subpart P, Appendix 1; and (4) Plaintiff did not have any past work;

2  but (5) could perform jobs that exist in significant numbers in the national economy.  AR 12-20.

3          Here, Plaintiff argues that: (1) the ALJ improperly rejected the physician's opinion, (2)

4  the ALJ's use of the grids was inappropriate due to Plaintiff's significant non-exertional

5  limitations, (3) the ALJ failed to provide clear and convincing reasons to reject Plaintiff's pain

6  testimony.

7                                    **DISCUSSION**

8          *A.      Evaluation of Psychological Opinions*

9          Plaintiff argues that the ALJ improperly rejected Dr. Shalts' opinion and adopted Dr.

10  Vea's opinion, a non-examining physician.  Defendant argues the ALJ properly considered and

11  appropriately weighed Dr. Shalts' opinion.

12          After examining Plaintiff, Dr. Shalts opined Plaintiff was able to understand, carry out

13  and remember simple instructions, but that she would have difficulty responding to the ususal

14  work situations or dealing with the routine work settings due to her mental illness.  As a result,

15  Dr. Shalts concluded that Plaintiff was not able to maintain gainful employment.  AR 167.  In

16  contrast, Dr. Vea determined Plaintiff had mild restrictions of activities of daily living, mild

17  restrictions in maintaining social functioning, and moderate difficulties in maintaining

18  concentration, persistence or pace.  AR 188.  Nevertheless, Dr. Vea opined that Plaintiff can

19  remember, understand, and carry out simple job instructions; can sustain concentration, attention,

20  persistence, and pace for simple, repetitive tasks; and can adapt to changes in work settings for

21  simple, repetitive tasks with limited public contact.  AR 191- 193.

22          Plaintiff contends that the ALJ must give clear and convincing reasons for rejecting Dr.

23  Shalts' opinion.  However, because Dr. Shalts' report was contradicted by another doctor, her

24  opinion may be rejected if based on specific and legitimate reasons that are supported by

25  substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995) (ALJ

26  may reject the testimony of an examining, but non-treating physician, in favor of nonexamining,

27  nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons

28  are supported by the substantial record evidence);  *Lester v. Chater*, 81 F.3d 821, 830-831 (9th

1    Cir. 1995) (citations omitted) (the opinion of an examining doctor, even if contradicted by

2    another doctor, can only be rejected for specific and legitimate reasons that are supported by

3    substantial evidence).

4         A review of the record demonstrates that the ALJ gave specific and legitimate reasons for

5    rejecting Dr. Shalts' report. The ALJ rejected Dr. Shalts' opinion because: (1) Plaintiff's work

6    history from March 2001 to late 2003 (which includes work as a cook, baker, cashier, and

7    dishwasher) supported a finding that she is able to perform simple repetitive work (AR 16, 101-

8    132), (2) Plaintiff testified that she was a good prep cook at her last job (AR 16, 64), (3)

9    Plaintiff's ability to answer medical personnel's questions and her cooperation with various

10   testing procedures demonstrate her ability to interact with supervisors and co-workers (AR 16,

11   197-324), 4) Plaintiff's testimony and third party reports, as well as medical records, support the

12   conclusion that Plaintiff has friends and family with whom she lives and who support her (AR

13   16, 52, 101-132, 163, 165, 169, 258, 259), and (5) Dr. Shalts did not have the benefit of any

14   Plaintiff's medical records, including those from Clinica Sierra Vista, which show improvement

15   with medication, or those from Plaintiff's therapist at California State University (AR 16, 158-

16   160,163, 164).

17        The reasons given by the ALJ and the evidence he cites in support of those assertions

18   constitutes specific and legitimate reasons for rejecting Dr. Shalts' opinion and accepting Dr.

19   Vea's report.  The Court notes that the ALJ did not reject all of Dr. Shalts' opinion. As the ALJ

20   noted, most of Dr. Vea's conclusions were based on Dr. Shalts' in-person evaluation.  AR 15.

21   The ALJ rejected only Dr. Shalts' conclusion that Plaintiff could not maintain gainful

22   employment.  On the other hand, the ALJ concluded that Plaintiff is able to perform light work

23   with limited public contact after appropriately considering all of the evidence and adopting Dr.

24   Vea's findings. The record establishes that Plaintiff can work in a variety of settings doing many

25   tasks and she continues to interact and maintain relationships with others. AR 44-45, 57-58, 64.

26   Additionally, Plaintiff's treatment records show that Plaintiff's mental condition had improved

27   with medication.  AR 158-160.

28

1   Plaintiff argues that Dr. Shalts' opinion supports Plaintiff's contention that she cannot

2   work because she believes people do not like her and because she sits alone in the corner.

3   Similarly, Plaintiff argues that her work history is not evidence of an ability to work. However,

4   the Court is not persuaded by these contentions. Plaintiff's one paragraph argument does explain

5   how these facts support her conclusions, nor does she cite any legal authority to support these

6   particular assertions.

7       **B.      ALJ's Use of the Grids**

8       Plaintiff argues that the ALJ's use of the grids at step five was inappropriate in light of

9   Plaintiff's non-exertional limitations of limited contact with the public and her hearing

10  restrictions. Defendant argues that the ALJ's finding at step five was supported by substantial

11  evidence.

12      The claimant has the initial burden of proving the existence of a disability within the

13  meaning of the Social Security Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The

14  claimant establishes a prima facie case of disability by showing that a physical or mental

15  impairment prevents him or her from engaging in his or her previous occupation. *Gallant v.*

16  *Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

17  However, once the claimant establishes a prima facie case of disability, the burden of going

18  forward with the evidence shifts to the Secretary. *Hammock v. Bowen*, 867 F.2d 1209 (9th Cir.

19  1989). The Secretary bears the burden of establishing the existence of alternative jobs available

20  to the claimant, given his or her age, education, and medical-vocational background. In an

21  appropriate case, the Secretary may meet this burden through application of the medical-

22  vocational guidelines set forth in the regulations.[5] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2

23  ("Appendix 2"); *Heckler v. Campbell*, 461 U.S. 458 (1983); *Odle v. Heckler*, 707 F.2d 439, 440

24  (9th Cir. 1983). If the guidelines do not accurately describe a claimant's limitations, the

25  Secretary may not rely on them alone to show availability of jobs for the claimant. *Desrosiers v.*

26

27      [5] For any given combination of factors (residual functional capacity, age, education, and work experience),
    the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular

28  limitations.

*Secretary*, 846 F.2d 573 (9th Cir. 1988).  However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude application of the guidelines.  Such non-exertional impairment must be found to significantly limit the range of work permitted by a claimant's exertional limitations before the Secretary will be required to obtain expert vocational testimony regarding the availability of other work.  *See, e.g., Polny v. Bowen,* 864 F.2d 661 (9th Cir. 1988); *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988); *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); and *Perminter v. Heckler*, 765 F.2d 870 (9th Cir. 1985).

Here, the ALJ found Plaintiff had the RFC to perform light work with limited public contact and that Plaintiff should avoid jobs requiring high definition (acute) hearing.  AR 13.  The ALJ further found that Plaintiff's additional limitations had little or no effect on the occupational base of unskilled light work.  AR 17.  He applied the medical-vocational guidelines as a framework and determined that jobs exist in significant numbers in the national economy that the Plaintiff can perform.  AR 16-17.

Light work represents " substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs, and thus generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competencies for unskilled work."  *See* 20 C.F.R.§ 404, Subpart P, Appendix 2, § 202.00.  Unskilled work requires little or no judgment to do simple duties that can be learned on the job or in a short period of time and does not focus on working with people. *See* 20 C.F.R. § 416.968.  Social Security Ruling 85-15 discusses the factors that should be evaluated when examining mental impairments and supports the contention that limited public contact would be consistent with unskilled light work:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work.  The basic mental demands of competitive, remunerative, unskilled work included the ability (on a substantial basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with a changes in a routine work setting.  A substantial loss of ability to meet any

of these basic work-related activities would severely limit the potential occupational base.

Social Security Ruling 85-15. Here, the ALJ found that Plaintiff should have limited public contact, but he did not identify other non-exertional limitations that would erode the occupational base. Although Plaintiff argues that the ALJ erred in using the grids regarding her restriction to avoid jobs requiring high definition (acute) hearing, she failed to articulate with specificity why she would be precluded from performing light work based on her hearing loss. Indeed, the record demonstrates that: (1) Plaintiff does not need hearing assistance in her daily activities; (2) she did not use hearing assistance devices during the hearing held on December 9, 2008, nor did any one present describe any issue with Plaintiff's ability to hear or communicate during the proceedings (AR36-70), (3) Plaintiff's hearing condition was only listed as mild or moderate in medical records (AR 168, 171, 172, 176, 195, 196), and (4) medical records, when appearing to address Plaintiff's hearing and work, mainly note that Plaintiff needs to use protective head gear or avoid loud noises. AR 168, 171, 172, 176, 195, 196. As such, the ALJ acted rationally when he concluded that this restriction would have little or no effect on the occupational base of unskilled light work. AR 17.

As stated above, use of the Medical Vocational Guidelines is precluded only if the ALJ determines that the claimant's non-exertional limitations significantly limit the range of work permitted by her exertional limitations. This evidence shows that Plaintiff's hearing condition does not significantly limit the range of light work as it appears she only needs hearing protection for loud noises. Similarly, Plaintiff has not established that her non-exertional impairment of limited public contact significantly limits her ability to perform light work. *See Summers v. Commissioner of Social Security*, 2009 WL 2051633 (E.D. Cal. July 10, 2009) (Because Plaintiff is capable of infrequent public and co-worker contact, there is no evidence of a significant non-exertional limitation affecting plaintiff's ability to perform unskilled light work). Given these circumstances, the ALJ's use of the Grids was proper.

///

///

12

*C.*     ***Plaintiff's Subjective Pain Limitations***

Plaintiff next argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective pain limitations. Specifically, Plaintiff contends that the ALJ improperly rejected her testimony based only on a lack of objective evidence to support her claims, improperly interpreted the third party testimony, and incorrectly relied on Plaintiff's activities of daily living. Defendant argues that the ALJ properly assessed Plaintiff's credibility.

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Plaintiff had the severe impairments of post left arm synovitis, chronic otitis media bilaterally, hepatitis C and B, and major depressive disorder. AR 12. He further found as follows:

> [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are partially credible, to the extent they are inconsistent with the above residual functional capacity assessment."

AR 14. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d at 345-346.

Plaintiff argues that the ALJ rejection of her testimony based only on a lack of objective evidence was improper. However, the lack of objective evidence was not the only basis that the ALJ relied in making his credibility determination. To the contrary, the ALJ gave several reasons for rejecting Plaintiff's testimony that are supported by the record. AR 13-16. These reasons included the following: (1) despite complaints of arm and leg pain and immobility/loss of use, motor strength and muscle tone of Plaintiff's arms and legs were normal, as was her range of motion, reflexes, and sensory examination (AR 168-172), (2) Plaintiff cancelled a liver biopsy that her doctors recommended (AR 302-324), (3) Plaintiff provided no records to substantiate she was seen four months prior to the hearing at Kern Medical Center or that a treatment plan had been proposed (AR 67), (4) Plaintiff's alleged falls due to leg problems or her inability to walk

are not substantiated by medical records (AR 52, 56, 168-172, 197- 276), (5) apart from mild conduction delay and mild sensor demyelinating neuropathy, neurological reports and examinations show normal results that refute Plaintiff's claims the contrary (AR 168-172, 302-324), (6) Plaintiff did not attend alcohol treatment classes as recommended by medical professionals (AR 230, 233, 307, 308), (7) Plaintiff was assessed as having normal/functional results in several mental examination areas (such as abstract thinking, stream of mental speech, memory) (AR 163-167), (8) Plaintiff has family and friends with whom she interacts and socializes (AR 52, 101-132, 163, 165, 169, 258, 259), and (9) progress notes show improvement when she takes her medication (AR 158-160).

These are all proper reasons to discount Plaintiff's credibility. *See, Warre Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006)*; (impairments that are effectively controlled with medication are not disabling); *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); *Bunnell v Sullivan*, 947 F.2d at 346-47 (factors to evaluate credibility include medication effectiveness, side effects of medication, and functional restrictions, as well as "ordinary techniques of credibility evaluation"; treatment and lack of treatment are factors used to evaluate credibility); *Fair v. Bowen*, 885 F.2d at 603-04 (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony; additionally, failure to follow prescribed treatment can be considered in determining credibility); see also 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; inconsistencies in evidence will support a rejection of credibility); SSR 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function).

Furthermore, contrary to Plaintiff's contention, the ALJ may discount Plaintiff's credibility based on daily activities. *Orn v. Astrue*, 495 F.3d at 638.  Here, the ALJ only relied upon

Plaintiff's relationships and not her physical activities in his credibility finding.  This is proper.  *See, Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (maintaining relationships with others speaks to a claimant's increased functionality).

Finally, Plaintiff argues that the ALJ's interpretation of third party reports was not reasonable.  AR 128.  Specifically, she contends the third party testimony establishes that Plaintiff does not get along with others and that she is a depressed disturbed woman in need of help.  However, the ALJ interpreted this evidence along with other evidence in the record to conclude that Plaintiff is socially functional enough to have family and friends who live with her, whom she socializes with, and who help her.  AR 16, 52, 101- 132, 163, 165, 169, 258, 259.  Even though Plaintiff has another interpretation of this evidence, the ALJ's determination of the evidence is controlling. See *Burch v. Barnhart*, 400 F.3d at 679.  It is not the role of the Court to redetermine Plaintiff's credibility *de novo*.  Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence is rational, as it is here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d at 680-81.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Joann Ruiz.

IT IS SO ORDERED.

**Dated:   March 8, 2011**          **/s/ Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE